# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No.
One Samsung Galaxy J7 Star Cellular Telephone )
IMEI: 359797095516173 )
) **19MJ4209**



## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the     Southern     District of     California    , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324 | Bringing In Illegal Aliens |

The application is based on these facts:
See Affidavit of CBP Enforcement Officer Steven S. Serrano, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Steven S. Serrano, U.S. Customs and Border Protection
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/27/2019

*Judge's signature*

City and state: San Diego, CA      Hon. F.A. Gossett, III, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Steven S. Serrano, United States Customs and Border Protection Enforcement Officer, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant for one Samsung Galaxy J7 Star Cellular Telephone IMEI: 359797095516173 (the **Target Device**) seized from defendant Elizabeth Escobar (Defendant) on or about August 30, 2019, incident to her arrest for smuggling two illegal aliens into the United States in violation of 8 U.S.C. § 1324 within the Southern District of California. The **Target Device** is in the possession of the United States Customs and Border Protection at 720 E. San Ysidro Blvd., San Ysidro, California 92173. The **Target Device** is further described in Attachments A, incorporated herein by reference.

2. I seek authority to search the **Target Device** for evidence of crimes, specifically violations of Title 8, United States Code, Section 1324, further described in Attachment B, incorporated herein by reference.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during the course of this investigation. The information contained in this Affidavit is based upon my training, personal observations and knowledge, my review of various official reports, and upon conversations with other Customs and Border Protection Officers. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Customs and Border Protection Officer and have been so employed since April 2003. I am currently assigned to the San Ysidro, California Port of Entry.

5. In the course of my duties, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; the

1

transportation and harboring of undocumented aliens within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by undocumented aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Customs and Border Protection Enforcement Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators. For example, drivers responsible for bringing illegal aliens into the United States are typically in telephonic contact with co-conspirators and/or the sponsors of illegal aliens immediately prior to and/or following the crossing of the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Based upon my training and experience as a Customs and Border Protection Officer, and consultations with law enforcement officers experienced in alien smuggling investigations, I am also aware that:

a. Alien smugglers will often use cellular telephones because they are mobile, and they afford smugglers instant access to telephone calls, text, web, and voice messages.

b. Alien smugglers will often use cellular telephones to coordinate and monitor the progress of the aliens while the conveyance is in transit.

c. Alien smugglers will often use cellular telephones to synchronize an exact drop off and/or pick up location and time of the aliens.

d. Alien smugglers will often use cellular telephones to notify or warn their accomplices of law enforcement activity.

9. Based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

3

    d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

    e. tending to identify the user of, or persons with control over or access to, the target devices; and

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On August 30, 2019, at approximately 5:38 a.m., Defendant entered the United States from Mexico through the San Ysidro Port of Entry as the driver and sole occupant of a 2007 Mercury Mariner bearing California license plates (the vehicle). Defendant stated that she was going to San Diego, California and that she had nothing to declare. The primary officer asked Defendant to open the vehicle's rear cargo door. After struggling, Defendant finally unlocked it. Inside, the primary officer noticed that the vehicle was clean and had no personal effects. He then noticed bodies in the cargo area underneath the floor area. Defendant was escorted from the vehicle, and the vehicle was referred to the secondary inspection area.

11. In secondary, two individuals – one male and one female – were assisted from a non-factory compartment located in the rear of the vehicle underneath the cargo-area floor. The male was later identified as Shangqin Xiao (MW1), and the female was identified as Ru Chen (MW2), both citizens of China with no documents or entitlements to enter the United States.

12. The vehicle and the **Target Device** was seized. Post-arrest, Defendant was advised of her *Miranda* rights and waived them. Defendant claimed ownership of the **Target Device**.

13. During her post-arrest interview, Defendant stated that he had met a man (the man) seven months ago through Facebook while living in Tijuana, Mexico. They dated before she went to Oregon for work. She recently had returned to Tijuana and got back in touch with the man. Defendant further stated that she has a son, who was born in Mexico,

4

who she wished to bring to the United States. The man offered to connect her with a family member in Los Angeles who "makes" birth certificates who would create one for her son for $300.  (Defendant believed this was legitimate.)

14.  Defendant stated that, on the date of her offense, she was traveling to Los Angeles to obtain the birth certificate. Additionally, the man had given her the Mercury Mariner to use for traveling there. However, the man had told her to cross the vehicle for a week prior to build up a crossing history. In connection with the offense, the man called her in the early morning and picked her up in a taxicab at approximately 3:00 a.m. Defendant stated that they went to a Taco shop in Tijuana where they waited until the vehicle was brought for her use. Defendant was instructed to contact the man after crossing. Defendant also was instructed to take pictures at the Port of Entry while in line and to send them to the man. Defendant stated that messages with the man and Port of Entry photographs would be on the **Target Device**.

15.  MW1 and MW2 also made post-arrest statements. They admitted that they are citizens of China without documents permitting them to be in the United States. They also stated that they were paying others to be smuggled into the United States. MW1 and MW2 could not identify Defendant. MW1 stated that he was going to New York, and MW2 stated that she was going to Chicago, Illinois.

16.  Based upon my experience investigating alien smuggling, my training, and my consultation with other investigators who have experience investigating alien smuggling near the border, I understand that alien smugglers will seek to smuggle aliens from Mexico into the United States by hiding them in hidden compartments of cars and in non-factory compartments (i.e., compartments that the manufacturer did not design for ordinary use). Smugglers will then drive north from Mexico and seek to pass through POEs with the aliens undetected. When they arrive in the United States, smugglers often will take the aliens to a discrete location to transfer them to other people who can transport the aliens to other locations.

17. Based upon my experience and investigation in this case, I believe that Defendant, the man, and/or other persons as-yet-unknown were involved in an alien smuggling venture from Mexico into the United States and that Defendant used the **Target Device** to coordinate with them to bring the aliens into the United States and transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the **Target Device**, which may identify other persons involved in alien smuggling activities.

18. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of the aliens. Given this, I respectfully request permission to search **Target Device** for data beginning on July 30, 2019, up to and including August 30, 2019.

## METHODOLOGY

19. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device

or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days absent further application to this Court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, I believe that probable exists to conclude that the **Target Device** was used to facilitate the offense of alien smuggling. The **Target Device** likely was used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by Defendant and/or others continues to exist on the **Target Device**. Therefore, I respectfully request that the Court issue this warrant.

//
//

1  I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Steven S. Serrano
CBP Enforcement Officer
U.S. Customs and Border Protection

Subscribed and sworn to before me this __27__ day of September 2019.

_____
HONORABLE F.A. GOSSETT, III
United States Magistrate Judge

8

## **ATTACHMENT A**
PROPERTY TO BE SEARCHED

The following property is to be searched:

> One Samsung Galaxy J7 Star Cellular Telephone
> IMEI: 359797095516173
> (the **Target Device**)

The **Target Device** is currently in the possession of the United States Customs and Border Protection at 720 E. San Ysidro Blvd., San Ysidro, California 92173.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data beginning on July 30, 2019, up to and including August 30, 2019, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of the bringing of illegal aliens into the United States in violation of 8 U.S.C. § 1324.